OPINION OF THE COURT
W. Denis Donovan, J.
Proceedings relating to the well-being of the subject three-year-old child Ivan Evans, Jr., have again come before this court for review. On August 28, 1978 the court directed that Child Protective Services, continuing its involvement in this matter, was to establish visitation and to arrange clinical evaluations of the parties. Thereafter, the court received a letter from Child Protective Services declining to follow the court’s directive on the ground that it had closed the case on this matter. It appears to the court that the Child Protective Service has misunderstood its function. It is this court that will determine when an agency’s responsibilities shall end, and not the agency that will inform the court that it no longer chooses to participate based upon its internal regulations.
*832 Accordingly, the court must now proceed to again review this matter and determine the appropriate action to be taken. The underlying facts are as follows:
By an order of this court dated the 9th day of April, 1975, the petitioner, Ivan Evans, was adjudicated to be the father of the subject child, Ivan Evans, Jr., then as yet unborn.
By petition sworn to on February 21, 1978 Rose Vasquez, as petitioner on behalf of Ivan Evans, Jr., alleged that "On or about February 11, 1978 at approximately 12:30 p.m. at petitioner’s residence, the respondent attacked the petitioner when she refused to go live with him. Respondent punched petitioner, knocked her head into a wall, and choked her, threatening to kill her. Petitioner’s child came into the room and began screaming at which time the respondent stopped his assault. However, respondent then took the child from petitioner and has refused to return the boy to petitioner since. Petitioner feels this behavior is harmful to the child and she insists that the boy be returned to her immediately.” The matter came on to be heard on February 21, 1978 at which time the Child Protective Services were directed to investigate the allegations made by the petitioner.
The court received a report from Child Protective Services dated March 23, 1978 signed by a unit supervisor and senior caseworker of the agency, which in part contained the following information: "We have known this family intermittently since 1975. Conflict over the children, manifested in physical abuse of each other and moving of the children from household to household is characteristic of their functioning. Ms. Vasquez resented Mr. Evans’ leaving LaShawn with her, not providing any emotional or financial support. He eventually brought LaShawn with him but left her with his sister in Florida. He admittedly will leave LaShawn alone while he goes to the store despite our warning to him.”
Based upon information such as this, the report then goes on to the conclusion that:
"We have not been aware of any maltreatment of either child by these individuals, though Ms. Vasquez resented caring for LaShawn. Ms. Vasquez does have a very chaotic lifestyle and poor control of herself and her child. Mr. Evans, likewise, changes his environment, it is insinuated, due to criminal activity but will ensure the care of his children with his mother or sister and has more definite limits in handling of his children.
*833 "Ivan Evans Jr. was in foster care from 10-14-76 to 11-30-76 by voluntary placement. During his placement he was observed to be non-verbal and had a very low frustration level.
"In reviewing this family’s patterns of relating to one another, the present situation is not unusual, with the exception that both have followed up with the court. The child, Ivan, does not seem to be in any danger.”
By petition sworn to on the 3rd day of March, 1978, Ivan Evans, Sr., as petitioner, sought custody of the subject child, three-year-old Ivan Evans, Jr., on the ground that "Respondent is unable to give proper care to Ivan, that the respondent’s apartment does not enjoy the usual utilities, that the respondent has not created for Ivan a wholesome atmosphere, that the respondent has behaved in an immoral way in the apartment and that the respondent is a disturbed, unstable person.” -
On June 27, 1978 the court directed that the Child Protective Services caseworker previously involved in this matter was to be notified to appear. By a return letter to the court dated August 1, 1978 the court was informed by the unit supervisor that "Yonkers Protective Services has closed its case on this family effective May 1, 1978. Although I will certainly be available for an appearance, I would have no information to provide in addition to what has been provided in our last report, dated March 23, 1978.”
On August 28, 1978 the court directed that all parties were to have full clinical evaluations to be arranged by Child Protective Services, and that the Child Protective Services were to be responsible for arranging and supervising visitation with the child.
In response to this order, the court received a letter dated August 31, 1978 from Child Protective Services, presumably the fruit of careful and extensive administrative deliberation, since it was now signed by three social workers; the unit supervisor, district director I, and district director III. The letter reads in its entirety as follows:
"Judge Donovan:
"On August 30, 1978 we received a copy of the signed release form for an investigation by the Probation Department in the above cited matter. A copy of this form is enclosed.
"Hand-written on the form were the additional directions *834 that Child Protective Services is to establish visitation and that the matter has been adjourned pending clinical evaluation to be arranged by Child Protective Services. As the Court was advised in Ms. Morea’s letters of August 1, and 16, 1978 this case is closed in Child Protective Services, and we have received no complaint concerning the welfare of the child which can be handled by this office. Therefore, we regret to inform you that the matters of visitation and evaluation cannot be arranged by Child Protective Services. However, Mrs. Michailides, the family’s previous Child Protective Services worker, stands ready to provide the Court with historical information in testimony, previously reported in her letter to the Court, dated March 23, 1978.
"Although we are unable to assist the Court in this matter, we will always be available to the Court in matters of neglect or abuse of children.”
This court is the ultimate instrumentality through which the rights of children and families are protected and vindicated. It relies upon the specialized knowledge in the behavioral sciences provided by psychiatrists, psychologists and social workers. In this regard, the Child Protective Services has a vital and unique role essential to the functioning of this court. It was established by the Legislature to serve this purpose, and now may not attempt to hold itself out as an autonomous agency. Such conduct would be counterproductive to the effective performance of its duties. The final determination that a proceeding has been concluded rests with the court. When fact finding is required to be made, it must be made by the court with appropriate evidentiary safeguards. Then, and only then, may conclusions be drawn. And when they are drawn, they are to be drawn by the court. This process may not be short circuited by agency determinations.
For all of the foregoing reasons, it is
ordered, that Child Protective Services shall immediately undertake to arrange clinical evaluations and appropriate visitation between the subject child and his parents, and to come before this court on December 14, 1978 to report is findings.